**MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Keith HICKS, and G & K Management Services, Inc., d/b/a Omni Convalescent Center, Estate of Allison Crooks, by Linda Crooks–Banks, Its Personal Representative, Defendants.**

**Civil Action No. 95–40261.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 1995.

Howard J. Radner, Thurswell, Chayet & Weiner, Southfield, MI, for Estate of Allison Crooks.

Steven J. Grobbel, Bellanca, Beattie & Delisle, P.C., Detroit, MI, for G & K Management Services, Inc.

John P. Jacobs, O'Leary, O'Leary, Jacobs, Mattson & Perry, P.C., Southfield, MI, for Mount Vernon Fire Ins. Co.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, Mount Vernon Fire Insurance Company, ("Mount Vernon") brings this motion for summary judgment in an action for declaratory judgment to determine the rights and obligations of the parties under two insurance policies issued by Mount Vernon to the defendant, G & K Management Services, Inc. ("G & K"). The declaratory judgment action arises out of an underlying state court action entitled *Estate of Allison Crooks v. G & K Management Company, et al.,* Wayne County Circuit Court Docket No. 93–327160–NH, and involves the same parties and issues raised before this court in *Mount Vernon Fire Ins. Co. v. Hicks,* Civil Action No. 94–72080, the disposition of which is published at 871 F.Supp. 947 (E.D.Mich.1994). That decision, to which there was no appeal or reconsideration sought, determined that Mount Vernon had no duty under the insurance policy to indemnify or defend G & K or Keith Hicks in an underlying state court action by the Crooks estate, as the claims asserted in that state court action were directly excluded by certain molestation and abuse provisions in the insurance policy. Mount Vernon filed its action for a declaratory judgment on June 10, 1995 in response to the filing of a First Amended Complaint by the Estate of Allison Crooks in Wayne County Circuit Court, raising two additional counts alleging negligence on the part of defendant Omni Convalescent Center ("Omni"). Mount Vernon filed this motion for summary judgment on August 16, 1995, contending that there is no genuine issue of material fact that the insurance policy clearly excludes coverage for the claims asserted in the First Amended Complaint. Because it finds that there is no genuine issue of material fact that the claims alleged in First Amended Complaint fall within the exclusion for molestation and abuse, this court will grant Mount Vernon's motion for summary judgment.

### I. Factual Background

Prior to the incidents alleged in the underlying state court action by the Estate of Allison Crooks, Mount Vernon had issued to G & K a comprehensive general liability policy (GLA 170741) and an excess policy (UCL 206416), covering the period between March 6, 1992 and March 6, 1993. The insuring agreement in those policies provides that:

> [Mount Vernon] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies, caused by an occurrence, and the duty to defend any suit against the insured seeking damages on account of such bodily injury, even if the allegations of the suit are groundless, false or fraudulent....

The policy defines occurrence as: "An accident including continuous or repeated exposure to conditions, which result in bodily injury neither expected nor intended from the standpoint of the insured." Moreover, the policy contains a "molestation or abuse" exclusion which provides:

> This policy does not apply to any injury sustained by any person arising out of or resulting from molestation or abuse by:
>
> (1) any insured;
>
> (2) any employee of the insured;
>
> (3) any person performing volunteer services for or on behalf of any insured; or
>
> (4) any other person.
>
> The company shall not have any duty to defend any suit against the insured seeking damages on account of such injury.

The intent of this endorsement is to exclude all injuries sustained by any person, including emotional distress arising out of molestation or abuse, including but not limited to molestation or abuse caused by negligent employment, investigation, supervision or reporting to the proper authorities, or failure to so report, or a retention, of a person for whom any insured is or ever was legally responsible.

On September 24, 1993, Linda Crooks–Banks, as co-personal representative of the Estate of Allison Crooks, filed a one count complaint in Wayne County Circuit Court against G & K and its employee, Keith Hicks, alleging that Allison Crooks was assaulted by Hicks on July 15, 1992. The complaint further alleged that Hicks was acting within the course and scope of his employment when the assault occurred and that the assault caused Allison Crooks to suffer "a massive intercerebral hemorrhage with transfalcin herniation with [sic] rendered him comatose until his death on August 18, 1992."

Upon receipt of the original complaint, G & K forwarded the pleading to Mount Vernon for defense and indemnification. Mount Vernon responded with a reservation of rights memorandum, advising that the allegations in the original complaint did not fall within the definition of an occurrence under policies GLA 170741 and UCL 206416 and were specifically excluded from coverage by the molestation and abuse provisions of the policies.

On May 24, 1994, Mount Vernon filed a complaint for declaratory judgment in this court, asserting that it had no obligation to defend or indemnify G & K or Hicks in the underlying state court action because the allegations of assault contained in the original complaint did not fall within the terms of the policies and were specifically excluded by the molestation and abuse provisions. This court granted Mount Vernon's motion for summary and declaratory judgment on December 22, 1994, finding that under the unambiguous language of the policies, Mount Vernon had no duty to defend or indemnify because coverage of the acts alleged in the original complaint was excluded by the molestation and abuse provisions. *See Mount Vernon*, 871 F.Supp. 947, 952 (E.D.Mich. 1994).

On December 29, 1994, the Estate of Allison Crooks filed its First Amended Complaint which raised two new counts as alternatives to the assault claim from the original complaint. Count II of the amended complaint alleges that Allison Crooks was assaulted by another resident of Omni, Herod Griffith, and that Omni was negligent in failing to restrain Griffith or to place him in another room. Count III contains several claims of negligence and malpractice committed by Omni, including an allegation that Hicks "was too rough in trying to restrain Allison Crooks on July 15, 1992 and caused him injury." In a Stipulation to Amend Complaint, the Estate of Allison Crooks amended counts II and III of the First Amended Complaint to allege that another resident, Sabo Hagopian, assaulted Allison Crooks.

On July 10, 1995, Mount Vernon filed a complaint seeking another declaration from this court that the facts alleged in the First Amended Complaint and Stipulation to Amend Complaint do not obligate Mount Vernon to defend or indemnify G & K in the underlying state court action. Specifically, Mount Vernon's declaratory judgment complaint requested that this court find the absence of an occurrence under the terms of the policies or find applicable the molestation and abuse provisions. On August 16, 1995, Mount Vernon filed the present motion for summary judgment as to its request for declaratory relief.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear

the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, .106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for

that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). While the evidence itself need not be the sort admissible at trial, it must be more than the non-moving party's pleadings. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990).

## III. Analysis

█ Mount Vernon submits that summary judgment is appropriate in this matter because there is no genuine issue of material fact that the abuse and molestation provisions of the insurance policies exclude coverage for all of the allegations contained in the First Amended Complaint. These allegations, Mount Vernon claims, merely substitute Griffith and Hagopian as the party responsible for the alleged assault on Allison Crooks. As such, they fall squarely within the provisions of the molestation or abuse exclusion and this court's prior decision in *Mount Vernon v. Hicks,* 871 F.Supp. 947 (E.D.Mich.1994). This is not altered by the fact that counts II and III are drafted as negligence and malpractice actions. These "new" counts are excluded from coverage, according to Mount Vernon, because they relate to abuse or molestation claims which are clearly excluded.

Mount Vernon also contends that the allegations contained in the counts II and III of the First Amended Complaint do not fall within the definition of an "occurrence" under the policies, because they are based on intentional assaults. Under Michigan law, Mount Vernon submits, intentional assaults are not ordinarily covered under liability pol-

icies containing language similar to the definition of occurrence in the policies at issue here.

G & K contests the motion for summary judgment on the ground that there is a genuine issue of material fact on the question of whether the new allegations raised in the First Amended Complaint are covered by the policies.[1] Counts II and III of the First Amended Complaint, G & K contends, set forth theories of liability based on negligence which trigger the coverage of the polices. Accordingly, under Michigan law Mount Vernon has a duty to defend G & K in the underlying action, even if the negligence claims might be non-meritorious or groundless, because the negligence claims arguably come within the policy coverage.[2]

G & K further argues that the allegations contained in counts II and III of the First Amended Complaint constitute an "occurrence" under the policy, because the bodily injury suffered by Allison Crooks was not "expected or intended from the standpoint of the insured." G & K asserts that there was no intentional act by Omni to cause any injury to Allison Crooks. Rather, Allison Crooks was injured by Omni's negligence and malpractice.

■ Coverage under a policy of insurance is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard v. Michigan Millers Mutual Ins. Co.*, 414 Mich. 686, 695, 327 N.W.2d 286 (1982). Additionally, an insurer is not required to defend claims specifically excluded from policy coverage. *Meridian Mutual*

*Ins. Co. v. Hunt,* 168 Mich.App. 672, 677, 425 N.W.2d 111, *app. denied,* 431 Mich. 874 (1984). Michigan law requires that unambiguous provisions of insurance contracts be enforced as written. *Ray Industries v. Liberty Mutual Ins. Co.,* 974 F.2d 754, 758 (6th Cir.1992). A court may not create an ambiguity where none exists or rephrase the clear and unambiguous language of the policy. *Group Ins. Co. v. Czopek,* 440 Mich. 590, 596, 489 N.W.2d 444 (1992). Moreover, while the exclusions to general liability provisions in an insurance policy are to be strictly construed against the insurer, clear and specific exclusions must be enforced on their terms. *Id.* at 597, 489 N.W.2d 444.

In its December 22, 1994 Opinion and Order, this court examined the allegations set forth by the Estate of Allison Crooks in its original complaint against G & K. *See Mount Vernon* at 951. The original complaint specifically alleged that Allison Crooks was assaulted by Keith Hicks, an employee of Omni, and that Hicks was acting within the course and scope of his employment when the assault took place on July 15, 1992. The complaint claimed that as a result of this assault, Allison Crooks sustained injuries which rendered him comatose until his death on August 18, 1992. G & K was liable for the wrongful death of Allison Crooks, according to the complaint, because it "[a]llowed its employees and other residents to physically assault, abuse and injury [sic] Plaintiff's decedent" and that it "[n]egligently hired, trained and supervised its employee, Defen-

---

1. The Estate of Allison Crooks filed a motion on September 7, 1995 concurring in the response motion and brief filed by G & K and Hicks.

2. G & K makes two additional arguments which merit some preliminary discussion by this court. First, G & K submits that the December 22, 1994 decision of this court is not res judicata as to counts II and III of the First Amended Complaint, because the First Amended Complaint contains negligence claims which were not raised in the original complaint. These negligence claims, G & K argues, will require the examination of evidence of Omni's breach of the standard of care which is different from the evidence adduced in the prior action relating to the assaults alleged committed by Hicks. As such, res judicata is inapplicable.

The court notes that the doctrines of res judicata or collateral estoppel could apply to the disposition this motion. Because such an analysis is unnecessary to the determination of this summary judgment motion, this court will not utilize it.

G & K also argues that this court should exercise its discretion to decline declaratory relief because the Wayne County Circuit Court has already accepted jurisdiction over this case. The propriety of declaratory relief in this matter was discussed in the December 22, 1994 opinion. *See Mount Vernon v. Hicks,* 871 F.Supp. 947 (E.D.Mich.1994). For the reasons set forth in that opinion, this court finds it equally appropriate to exercise its discretion to consider declaratory relief pursuant to 28 U.S.C. § 2201.

dant, Keith Hicks." The original complaint concluded:

17. That as a direct and proximate result of the malpractice and negligence of the Defendants alleged herein, Plaintiff's decedent, Allison Crooks, sustained personal injuries and death.

This court concluded that the original complaint was based entirely upon the allegations of assault by Hicks as the cause of the injuries and death of Allison Crooks. *Mount Vernon* at 952. Accordingly, this court held that Mount Vernon had no duty to indemnify or defend G & K or Hicks in the underlying state court action, because "[t]he claim of assault and the claims that are derivative of it [were] directly excluded by the molestation and abuse provisions of the insurance policy." *Id.*

To determine whether the molestation and abuse provisions are applicable to the new counts raised in the First Amended Complaint, this court must examine that complaint. Count II of the First Amended Complaint, as supplemented by the Stipulation to Amend Complaint, alleges in relevant part:

1. In the alternative to Keith Hicks assaulting Allison Crooks, Plaintiff alleges that another resident by the name of Herod Griffith and/or Sabo Hagopian assaulted Allison Crooks as a result of which Allison Crooks sustained a massive intracerebral hemorrhage with transfalcin herniation which rendered him comatose until his death on August 18, 1992.

\* \* \* \* \* \*

5. That as a direct and proximate result of Defendant, Omni Care Convalescent Center's negligence, Allison Crooks was assaulted by Herod Griffith and/or Sabo Hagopian which led to the death of Allison Crooks.

Count III of the First Amended Complaint asserts several breaches of the standard of practice required for the treatment of Allison Crooks, including specific examples of failure to administer tests, evaluations or medication. This count further claims that:

11. On July 15, 1992, Allison Crooks was tied down on his bed with restraints in a room with Herod Griffith and/or Sabo Ha-

gopian, a resident known for violent behavior. For several hours, Allison Crooks was left tied to his bed and no one checked on his status for several hours.

12. On July 15, 1992, Allison Crooks was either abused by Defendant, Keith Hicks or Herod Griffith and/or Sabo Hagopian or both of them, which abuse resulted in massive intracerebral hemorrhage with with [sic] transfalcin herniation which rendered him comatose until his death on August 18, 1992.

13. Defendant, Keith Hicks was too rough in trying to restrain Allison Crooks in his bed on july 15, 1992 and caused him injury.

\* \* \* \* \* \*

[15]. That as a direct and proximate result of Defendant Omni Convalescent Center's negligence and Defendant, Keith Hick's negligence, Allison Crooks suffered severe injuries and death.

Paragraph 15 is the only claim in Count III of the First Amended Complaint which alleges that Allison Crook's death was caused by Omni's negligence. There is no more specific allegation in Count III that the numerous alleged breaches of duty by Omni were the proximate or factual cause of the decedent's injuries and death.

Upon review of the claims asserted in the First Amended Complaint, this court finds that Counts II and III fall within the language of the molestation and abuse provisions of the insurance policies. Those provisions unambiguously exclude coverage for injuries sustained by persons arising out of or resulting from the molestation or abuse by any employee of the insured or "any other person." The allegations contained in Count II, naming Herod Griffith and/or Sabo Hagopian as the assailant, are merely a variation of Count I of the original complaint and are clearly excluded by the "any other person" language in the molestation and abuse provisions. The presence of the negligence language does not insulate Count II of the First Amended Complaint from the molestation and abuse provision or from this court's December 22, 1994 Opinion. Count II is identical to the original complaint in every respect

except that Count II names Herod Griffith and/or Sabo Hagopian as the assailant.

Similarly, the allegations in Count III of the First Amended Complaint fall within the molestation and abuse exclusion, as they ultimately derive from the claims of abuse in Count I of the original complaint. Even a casual reading of Count III reveals that the alleged breaches of duty asserted against Omni bear no relation whatsoever to the injuries upon which the claim for damages is based. Count III merely reiterates that Allison Crooks was abused by Hicks, Griffith, or Hagopian on July 15, 1992 and that as a result, he suffered injuries that ultimately led to his death. The claims in Count III are identical in substance to the allegations of abuse in the original complaint.

■■■ G & K's insistence that the claims alleged in counts II and III differ from Count I of the original complaint exalts form over substance. Michigan law is clear that where a policy excludes coverage for injuries arising out of an assault, then it is not appropriate to extend that coverage by characterizing that assault as "negligence." *See Smorch v. Auto Club*, 179 Mich.App. 125, 128–29, 445 N.W.2d 192 (1989) ("There is no duty to defend or provide coverage where the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of 'negligent' activities."). Michigan law is also clear that an insurer's duty to defend cannot be limited by the precise language of the pleadings. *Id.* Thus, while a court must find that an insurer has a duty under Michigan law to defend or indemnify if there are any theories in a complaint that arguably fall within coverage, even if those theories prove groundless or fraudulent, a court may look to the gravamen of the complaint to determine whether those theories do, in fact, fall within the coverage of the policy.[3]

This court finds that the negligence and malpractice actions asserted in Counts II and III of the First Amended Complaint are a transparent attempt to trigger Mount Vernon's duty to defend G & K in the underlying state court action. The true basis of each of these counts is the fact that on July 15, 1995, Allison Crooks was assaulted by a resident or employee of Omni and that the injuries sustained in that assault led to his death on August 18, 1992. The allegations of negligence by Omni in these counts are no different from the claims of negligence and malpractice alleged in paragraph 17 of the original complaint. Accordingly, Mount Vernon has no duty to defend or indemnify G & K or Hicks in the underlying state court action. The claims in Counts II and III are directly excluded by the molestation and abuse provisions of the insurance policy, just as the claim of assault and the claims derivative of it in Count I of the original complaint were. *See Mount Vernon* at 951–52.

Because the claims are excluded under the molestation and abuse provisions, this court need not decide whether the acts alleged in those Counts constitute occurrences under the policy.

## IV. Conclusions

This court finds that there is no genuine issue of material fact that the claims asserted in Counts II and III of the First Amended

---

3. *Aetna Casualty & Surety Co. v. Sprague*, 163 Mich.App. 650, 415 N.W.2d 230 (1987) is instructive. There, Aetna has issued an insurance policy to the parents of Charles Sprague who was charged with first-degree murder for the beating and beheading of Marlene Wayne. The personal representative of Wayne's estate filed a wrongful death action against Sprague and his father, which was amended later to include negligence and malpractice claims against various professionals who treated the mentally ill Sprague prior to the killing. Aetna sought a declaratory judgment that it had no duty to defend or provide coverage to Sprague under the policy, because there was an exclusion for bodily injuries "expected or intended" by the insured.

The representative of Wayne's estate responded that the claim was based on Sprague's negligence in failing to take his medication and pursue prescribed psychiatric treatment.

The court of appeals disagreed with the representative's characterization of the complaint, concluding that "the true basis for the complaint is the fact that Sprague killed Wayne." Thus, even though the complaint alleged negligence, the fact that Sprague expected or intended that Wayne would die convinced the court that the complaint was a "transparent attempt to trigger insurance coverage" through recharacterization as a negligence action. *Id.* at 653–54, 415 N.W.2d 230.

Complaint fall within the unambiguous language of the molestation and abuse provisions. Accordingly, Mount Vernon is entitled to a judgment as a matter of law that it has no duty to defend or indemnify any of the defendants under any of the counts alleged in the First Amended Complaint filed in the underlying state court action.

## ORDER

Therefore, it is hereby **ORDERED** that the plaintiff's motion for summary judgment is GRANTED.

**SO ORDERED.**