### CONTINENTAL MORTGAGE AND EQUITY TRUST, Plaintiff,

v.

### MERIDIAN MUTUAL INSURANCE COMPANY, Defendant.

#### Civil Action No. 96–40277.

United States District Court, E.D. Michigan, Southern Division.

July 11, 1997.

Donald J. Hutchinson, Miller Canfield, Detroit, MI, for Plaintiff.

William J. Liedel, Detroit, MI, for Defendant.

**ORDER DENYING CONTINENTAL MORTGAGE AND EQUITY TRUST'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART MERIDIAN MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

GADOLA, District Judge.

In 1991, Clarence Bell ("Bell") procured a business owner's policy of insurance ("Policy") through defendant Meridian Mutual Insurance Company ("Meridian") for property commonly known as "Crystal Court Apartments." The Policy named Continental Mortgage and Equity Trust ("Continental") as a "mortgage holder."

On April 18, 1994, a sixty-foot span of a third-floor walkway at Crystal Court Apartments collapsed. After the collapse, Meridian issued three checks totaling $30,054.46. First, Meridian issued a check in the amount of $19,611.46 payable to Bell and Continental for the structural and building losses which resulted from the collapse of the third-floor walkway. Second, Meridian issued a check to Bell in the amount of $6,400.00 for lost rents Bell incurred during the period of time that the third-floor walkway was being restored (Kustasz Aff. at ¶ 3). And, third, Meridian issued a check to Bell in the amount of $4,043.00 to cover "debris removal, clean-up, securing walkways, a temporary wall and a portion of an engineering bill submitted by Signal [Building Company]." (Kustasz Aff. at ¶ 4).

On April 18, 1996, Continental commenced this action against Meridian, seeking to recover $30,054.46 in damages—the amount of the three checks issued to either Bell, or Bell and Continental, after the collapse of the third-floor walkway.[1] Continental maintains that a specific provision in the Policy obligated Meridian to pay Continental, and *only* Continental, such sums.

Continental filed a summary judgment motion on January 22, 1997, insisting, *inter alia,* that Meridian improperly paid $30,054.46 to either Bell, or Bell and Continental jointly,

and that Continental alone should have received such monies. Meridian responded with a summary judgment motion of its own on February 13, 1997, arguing, among other things, that it paid $30,054.46 to the proper parties. On April 14, 1997, this court issued an opinion and order requesting further briefing on both parties' motions for summary judgment as to the $30,054.46.[2] Upon a review of the briefs submitted and all the relevant authorities, this court finds that Continental's motion for summary judgment in the amount of $30,054.46 must be denied and Meridian's motion for summary judgment in that same amount must be denied in part and granted in part.

### DISCUSSION

Continental maintains that it is entitled to payment in the amount of $30,054.46 under a provision in the Policy applicable to "mortgage holders" ("Mortgagee Clause"). That provision reads as follows:

PROPERTY GENERAL CONDITIONS

 * * * * * *

2. Mortgage Holders

The term "mortgage holder" includes trustee.

*We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.*

The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the *mortgage holder will still have the right to receive loss payment if the mortgage holder"*

(1) Pays any premium due under this policy at our request if you have failed to do so;

---

1. Continental also seeks an additional $140,000.00 in damages.

2. This court also denied both parties' summary judgment motions as Continental's claim for $140,000.00.

(2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the above terms of this policy will then apply directly to the mortgage holder.

If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

(emphasis added).

### 1. Mortgage Clause

■ The provision at issue in this case is a "mortgage clause." Such clauses denote the method by which the policy's proceeds are to be distributed in the event of a loss. *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1479, n. 3 (6th Cir.1991) (citing 10A Couch Cyclopedia of Insurance Law 2d § 42:684 (Rev. ed.)). In particular, these clauses direct the insurer to pay certain proceeds of the policy to the mortgagee as his interest may appear, prior to paying the insured. *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 383–84, 486 N.W.2d 600 (1992). *See also Better Valu Homes v. Pre-*

*ferred Mutual Ins. Co.,* 60 Mich.App. 315, 319, 230 N.W.2d 412 (1975).[3]

Insurers face the possibility of being doubly liable under mortgage clauses. *Better Valu Homes,* 60 Mich.App. at 319, 230 N.W.2d 412. That possibility could arise if an insurer, which is obligated to pay a mortgagee under the terms of a mortgage clause, mistakenly pays the mortgagor. *Id. See also Community Nat. Bank of Pontiac v. Michigan Basic Property Ins. Ass'n,* 159 Mich. App. 510, 520, 407 N.W.2d 31 (1987) (insurance company's payment of fire insurance proceeds to insured pursuant to a court order was not a defense to the mortgagee's subsequent lawsuit to recover the same proceeds), *lv. app. denied,* 429 Mich. 876 (1987).

### 2. Whether Meridian Properly Paid Three Checks Totaling $ 30,054.46

Continental argues that Meridian violated the plain terms of the Mortgagee Clause by paying Bell two checks totaling $10,443.00. Continental insists that it should have been paid such monies instead. Continental further maintains that Meridian mistakenly paid a third check to tie order of Bell and Continental jointly in the amount of $19,611.46. Continental maintains that Meridian should have instead paid that third check solely to Continental under the terms of the Mortgagee Clause of the Policy. Each check will be addressed in turn.

### a. Check # 1

■ The first check at issue in these cross-motions for summary judgment is a check for $6,400.00 paid to Bell for the lost rents he sustained during the period of time that the balcony was being replaced. This court finds that Meridian properly tendered this $6,400.00 check to Bell, not Continental.[4]

---

**3.** Mortgage clauses can be classified into two distinct categories: (1) ordinary mortgage clauses (a.k.a. loss payable clauses) and (2) standard mortgage clauses (a.k.a. standard clauses, union clauses or union mortgage clauses). The fundamental difference between these two categories is that the latter type of mortgage clause, which is at issue in the case at hand, is more specific, in that it provides that the mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner, so that it shall not defeat

the insurance so far as the interest of the mortgagee is concerned. In other words, standard mortgage clauses declare that the act of the mortgagor cannot affect the right of the mortgagee. 10A *Couch Cyclopedia of Insurance Law 2d* § 42:682 (Rev. ed.).

**4.** Subparagraph F of the "Additional Coverages" section of the Policy obligates Meridian to pay for the "actual loss of business [the policy holder] sustain[s] due to the necessary suspension of

In this court's opinion, Continental does *not* have a claim to such insurance proceeds under the Policy's Mortgagee Clause. The plain, unambiguous terms of the Mortgagee Clause entitles Continental to payment *only* for *building or structural* loss. *Mount Vernon Fire Ins. Co. v. Hicks*, 910 F.Supp. 316, 320 (E.D.Mich.1995) (holding that unambiguous provisions in insurance policies must be enforced as written).[5] Lost rents is not "building or structural loss." [6]

### b. Check # 2

The second check at issue in this case is a check for $4,043.00 paid to Bell for "debris removal, clean-up, securing of walkways, a temporary wall and a portion of the engineering bill." (Kustasz Aff. ¶ 5). Continental maintains that this check should have been paid to it, and that Meridian must now pay Continental $4,043.00, notwithstanding its prior payment to Bell.

This court finds the tender of money to Bell for "debris removal and clean-up" to be proper for the same reason that the tender of monies to Bell for lost rents was proper. This payment was not made for building or structural loss. Accordingly, insofar as the check covered debris removal and clean-up, summary judgment must be granted Meridian and denied Continental.

In regard to the remainder of this check (i.e., "securing the walkways, a temporary wall and a portion of the engineering bill"), this court cannot determine if payment to Bell was proper and must deny summary judgment to both parties. Specifically, it is not clear to this court whether such payments were made to Bell for his efforts in restoring the property back to the condition it was in before the collapse, or whether such payments were made for temporary measures Bell took to warn and protect third persons from the collapsed condition.[7] Under Michigan law, Continental's right to receive direct payment for building or structural damage is fixed at the time of the balcony collapse. *Pink v. Smith*, 281 Mich. 107, 112, 274 N.W. 727 (1937).[8] If the mortgagee is insured under the Policy by way of a standard mortgage clause, "the insurer cannot set up as a defense [to paying the mortgagee] the fact that the insured buildings have been restored by the mortgagor to as good a

---

[the policy holder's] 'operations' during the 'period of restoration.' "

5. Continental points out that the mortgage agreement entered into between it and Bell grants Continental a security interest in the rents at Crystal Court Apartments. This court fails to see the relevance of this fact to the issue at hand. Nothing contained in the Policy at issue makes Meridian's liability under the Mortgagee Clause co-extensive with Continental's security interest under the mortgage agreement between Bell and Continental.

6. In its reply brief, Continental cites two cases, *In re Coventry Commons Associates*, 143 B.R. 837 (E.D.Mich.1992) and *In re River Oaks Ltd. Partnership*, 166 B.R. 94 (E.D.Mich.1994), which have nothing whatsoever to do with the issue at hand. Both cases involve the post-petition use by Chapter 11 debtors of rents in which a creditor has a perfected security interest. The case of *In re Coventry Commons Associates*, 143 B.R. 837, dealt more precisely with the issue of whether a Chapter 11 debtor, before spending shopping center rents, had to first gain the approval of the Bankruptcy Court to ensure that the mortgagor who had a perfected security interest in the rents was "adequately protected" pursuant to 11 U.S.C. §§ 363(c)(2)(B) and (e). The court in *In re River Oaks Ltd. Partnership* was confront-

ed with the question of whether a Chapter 11 debtor could pay expert witness fees out of postpetition rents to which a mortgagor had a perfected security interest without providing adequate protection under 11 U.S.C. § 363. Neither of these cases address the question at issue in this case, that being whether a standard mortgage clause in an insurance policy obligates the insurer to pay proceeds for lost rents and other items to the mortgage holder instead of the insured. Thus, these two cases do not provide *any* authority for Continental's position that it is entitled to payment of lost rents under the Mortgagee Clause of the Policy.

7. For instance, the temporary wall may have been built around the site to keep persons from entering the area.

8. Consider the following hypothetical: A balcony collapses resulting in $20,000 worth of building and structural loss. The insured pays $5,000 for repairs. Under Michigan law, the mortgagee's loss is established at the time of collapse and the amount of loss payable to the mortgagee becomes fixed at that time. *Pink v. Smith*, 281 Mich. 107, 112, 274 N.W. 727 (1937). Accordingly, the restoration of the premises by the owner-insured in the amount of $5,000.00 is immaterial in calculating the mortgagee's recovery.

condition as before loss." *Id.* at 111, 274 N.W. 727. With this in mind, if these repairs were only temporary measures, and if Meridian did not offset its liability to Continental as a result of these measures, then Meridian properly paid Bell. On the other hand, if they were measures to restore the property to the condition it was in before the loss, and if Meridian, on account of such measures taken by Bell, reduced its liability to Continental for the building or structural loss or damage that resulted from the collapse, then Meridian owes Continental the amount by which it offset its liability.

### c. Check # 3

The third check at issue is a check made payable to the order of Bell *and* Continental jointly in the amount of $19,611.46. This check has never been cashed by Bell because of his lack of authority to endorse Continental's signature on the check. Continental contends that this check should have been made payable to the order of "Continental" only. Continental thus seeks summary judgment in the amount of $19,611.46

The parties motions for summary judgment regarding the $19,611.46 check have recently become moot. On April 29, 1997, Bell released and assigned to Continental his right to receive payment on the $19,611.46 check (and any further payments under the Policy). Now that Continental has obtained rights to the $19,611.46 check free and clear of Bell's interest, its claim for recovery of the same is moot.[9]

### ORDER

**IT IS HEREBY ORDERED** that CONTINENTAL MORTGAGE AND EQUITY TRUST'S motion for summary judgment in the amount of $30,054.46 is **DENIED**.

**IT IS FURTHER ORDERED** that MERIDIAN MUTUAL INSURANCE COMPANY's motion for summary judgment is **GRANTED** in the amount of $6,400.00 and **DENIED** in the amount of $23,654.46.

**SO ORDERED.**

---

9. This court does note, however, that Continental did err in making the check out to Continental and Bell jointly. It is undisputed that this third check represented building and structural damage and losses. Under the plain terms of the Mortgagee Clause in the Policy then, Meridian should have made the check out to Continental *only*.