**In re RIVER OAKS LIMITED PARTNERSHIP.**

**The TRAVELERS INSURANCE COMPANY, Appellant,**

v.

**RIVER OAKS LIMITED PARTNERSHIP, Appellee.**

No. 93–CV–72581–DT.
Bankruptcy No. 92–11111–S.

United States District Court, E.D. Michigan, S.D.

Feb. 18, 1994.

John C. Murray, Oak Brook, IL, William T. Burgess, Detroit, MI, David Fleischer, Douglas L. Furth, New York City, for Travelers Ins. Co.

Louis P. Rochkind, Brian Shannon, Wendy Zabriskie, Detroit, MI, for River Oaks Ltd. Partnership.

## *OPINION*

DUGGAN, District Judge.

This matter is before the Court on appeal by The Travelers Insurance Co. ("Travelers"), pursuant to Fed.R.Bankr.P. 8001(a) from the bankruptcy court's Orders of May 18, 1993 and June 18, 1993.[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

Debtor, River Oaks Limited Partnership ("ROLP"), is the owner of a 424–unit apartment complex in Rochester Hills, Michigan, which is subject to Travelers' first priority mortgage. The mortgage, along with an assignment of rents and leases executed and delivered by ROLP in favor of Travelers, secures ROLP's obligations to Travelers pursuant to a note of an original principal amount of $27,000,000. Travelers has a duly recorded mortgage on the property and an assignment of rents, and accordingly, holds a perfected first priority lien on the building and rents from the property under Michigan law.

On March 22, 1993, the bankruptcy court ruled—irrespective of the existence of any default—that under Michigan law, Travelers, by recording its assignment, acquired a per-

---

1. A June 9, 1993 Order denied Travelers' Motion for Rehearing on an Opinion and Order dated May 18, 1993. Travelers' brief suggests that it is appealing the May 18 (Travelers Br. Ex. 6) and June 18 (*id.* Ex. 10) orders only (*id.* at 25).

fected security interest in the rents sufficient to confer such rents with the status of cash collateral under 11 U.S.C. § 363. Following the court's ruling, the parties stipulated on the record [2] that:

(1) ROLP would not use cash collateral except in accordance with a monthly budget;

(2) that ROLP would submit its monthly budget to Travelers not later than five (5) business days prior to the first of each month;

(3) that if Travelers objected to any line item contained in the budget of $15,000.00 or more, ROLP would not make expenditures with respect to such line items without a court order or the permission of Travelers;

(4) and that if Travelers objected to any line items less than $15,000.00, ROLP could not make expenditures with respect to such line items for at least five (5) business days during which period Travelers would have the opportunity to obtain a court order prohibiting such expenditures.

The bankruptcy court conducted a hearing on the April budget, and subsequently ROLP submitted its proposed budget for May, 1993. The budget contained a line item for "Legal and Accounting Expense" in the amount of $20,200.00, which was later determined to be for the payment of expert witnesses in connection with on-going bankruptcy litigation regarding the use of cash collateral and other contested matters between ROLP and Travelers.

The April 8, 1993 Order regarding cash collateral allows for the use of rents for ordinary or necessary costs and expenses of operating and maintaining ROLP's apartment project. The issue before the bankruptcy court, and this Court on appeal, is whether ROLP should be permitted to pay expert witness fees out of the cash collateral authorized to be used by ROLP under the Order.[3]

Travelers objects to payment of expert witness fees as a matter of law, maintaining that cash collateral, consisting of the rents from the apartment project which are covered by the assignment of rents taken by Travelers as security, cannot be used unless adequate protection is provided by ROLP,[4] as required by 11 U.S.C. § 363. Further, Travelers maintains that the debtor has not established that adequate protection exists for its security interests. The court appears[5] to have concluded that Travelers' interest in the rents equating cash collateral was adequately protected by the continued operation of the apartment project and the regeneration each month of a new rent roll, presumably at the approximate level as the previous month. The court summarized that:

[i]f the regeneration of the rent rolls each month and the continued maintenance of the property produces a result constituting adequate protection to Travelers, than [sic] the use to which those rent receipts, while important (and to be controlled and supervised) is of secondary not primary importance. It should also be kept in mind that the excess rents are kept in a separate account, the disposition of which has yet to be decided or agreed upon, and was explicitly left open for future disposition. Many of the cases cited by Travelers seem to infer that where adequate protection exists or has been found, the situation might be

---

2. The stipulation was subsequently incorporated in an Order Authorizing Use of Cash Collateral entered on April 8, 1993.

3. The parties agree that the rents are cash collateral, and the Order specifies that ROLP is "authorized to use all Rents, subject to the terms and conditions contained in this Order, for the payment of ordinary and necessary costs and expenses of operating and maintaining the Apartment Project." (Travelers App. Ex. 2 at 3).

4. Travelers contends, as discussed more thoroughly below, that to establish adequate protection, the value of the secured assets would have to exceed the secured claim. The bankruptcy court did not decide the issue of whether the value of the secured assets (the apartment project) exceeded the Travelers' secured claim.

5. The bankruptcy court did not *explicitly* rule that Travelers was adequately protected, as evidenced by its ruling on May 18, 1993. The court used language like "if the regeneration of the rent rolls each month...." Nevertheless, the parties' briefs reflect the assumption that the bankruptcy court ruled that Travelers was adequately protected (Travelers Br. at 2 & ROLP Br. at 17).

different. In effect, this Court's conclusion is that where adequate protection of rents as cash collateral is or is deemed to exist, the ordinary and necessary expenses, may very well include such expenses as are being sought here, even though such might not be allowable in a strict § 506(c) proceeding.

(May 18 Opinion at 5–6).

After "concluding" that adequate protection exists, the court discussed whether the expenditures which are at issue were proper under 11 U.S.C. § 506(c). The court in its May 18 Order stated that:

[i]n the context of the status of this case, at this time, the Court cannot rule out the expense at issue as a matter of law even under § 506(c), though under the statute, benefit to the creditor obviously is a criteria.

As noted, yet to be determined specifically in each instance, and at another time, *prior to actual payment,* (1) were or are the expenditures really necessary? (2) were or are the requested amounts reasonable? and, (3) to what issues or matters were each related.

(May 18 Opinion at 6–7).

The court held a hearing on June 16, 1993 addressing, in part, whether certain expenditures should be approved.[6] On June 18, 1993, the court issued an order determining that "the Zalenko ($8,269.85) and Conway ($4,479.00) items are presently allowable." The court further stated:

As to the remaining requests they will be allowed, in whole or in part, based on [a] procedure adopted in the interest of securing additional information on which to base a decision as to afford Travelers appropriate response time and information.

(June 18 Opinion at 2).

Travelers has appealed from the bankruptcy court's Orders of May 18, 1993, and June 18, 1993.

■■■ This Court concludes that the debtor has not shown, pursuant to 11 U.S.C. § 363, that there is adequate protection for Travelers' security interests. Travelers has two distinct security interests; it holds a mortgage on the apartment project, and a perfected security interest in rents. *See In re 499 Warren St. Assoc. Ltd.,* 142 B.R. 53, 56 (Bankr.N.D.N.Y.1992). Each of these interests must be adequately protected. While case law suggests that the rents generated from a rental building, *i.e.* cash collateral, may be used for the operation and maintenance of such building,[7] that principle does not, in this Court's opinion, mean that using such cash collateral to operate and maintain the property necessarily constitutes adequate protection under § 363.

In this Court's opinion, an independent determination must be made as to whether a secured party that has a perfected assignment of rents is adequately protected. If there is adequate protection under § 363, then the debtor may use the cash collateral for expenses not directly related to the oper-

---

**6.** During the June 16 hearing, ROLP's counsel explained that experts were retained by him to respond to the following pleadings filed by Travelers: (1) objection to motion for use of cash collateral; (2) supplemental objection to the same; (3) motion to restrict use of rents; and (4) motion to dismiss (Travelers Tr. Vol. 2, Ex. 10 at 58). The expenditures for the retention of three firms that did or would provide expert services were discussed:

(1) Conway, Mackenzie & Dunleavy (Conway). Mr. Conway testified at hearings regarding the use of cash collateral. He testified as to the knowledge, ability and involvement of ROLP's management, and whether it was common industry practice to use batch disbursements. The fee for Conway's services was $4,479.

(2) Premise Associates, Inc. (Premise). Mr. Thomas testified (Ms. Kate Beebee was also present) at one of the cash collateral hearings. He

testified about the adequacy of ROLP's books and records, particularly to the level of expenses. Mr. Thomas also aided in the first phase of discovery as to the same issue. Premise submitted a bill for $12,200.

(3) Zalenko and Associates. Zalenko aided ROLP in addressing Travelers' motion to dismiss. It was hired to look into alleged improper transactions between "insiders," and responded to why a new management company should not be selected. The total fee submitted was for $13,-200, however, only $8,269.85 was for past services—the rest was for anticipated future services. Travelers in its reply brief also mentions the expenditures for Oetzel, Hanton & Williams, an appraisal firm, but fees for Oetzel's services were not discussed during the June 16 hearing.

**7.** Appellant does not dispute this principle.

ation and maintenance of the apartment project, e.g., administration expenses, because in that situation, the secured party has no right to object. If it is adequately protected, its security interest is not jeopardized by the payment of such expenditures. This Court stated in *In re Coventry Commons Assoc.*, Case No. 91–CV–75730–DT, Feb. 19, 1993 (*Coventry Commons II*) that:

> Because the Bankruptcy Court specifically found that Travelers' interest in the post-petition rents is adequately protected, the debtor does *not* need the consent of Travelers before using post-petition rents to cover administrative expenses *if* it is true that the interest of Travelers in post[ ] petition rents is adequately protected.

(Opinion at 7) (emphasis in original).[8]

Debtor contends that the bankruptcy court was correct in its "conclusion" that the regeneration of rent rolls each month and the continued maintenance of the property constitutes adequate protection to Travelers. This Court disagrees. The cases relied upon by the debtor[9] do not, in this Court's opinion, support the proposition that where a creditor has a security interest in both the building *and* an assignment of rents that the creditor's security interest is adequately protected simply because the property is properly maintained and future rents are expected. Rather, these cases hold that a portion of the rental income covered by the assignment of rents may be used for the necessary expenses of operating and maintaining the rental project. They do not hold that the "net" rental income, *i.e.* the rental income in excess of expenses necessary for the maintenance and operation of the rental project, may be used for any other purpose. In this Court's opinion, the rental income, constituting cash collateral, may not be used for expenses not related to the operation and maintenance of the building generating the rents,

except as may be permitted pursuant to 11 U.S.C. § 506(c), as hereinafter discussed. Courts addressing the right to use a portion of the rental income for necessary expenses of operating and maintaining the rental property seem to authorize such use utilizing one of two approaches. The courts employing the first approach suggest that the secured party possesses a security interest only in the "net" rental proceeds, *i.e.* those proceeds remaining *after* the payment of necessary expenses of maintaining the rental project. Thus the creditor continues to be "adequately protected" as long as the rental income is used only for the necessary expenses of maintaining and operating the rental project.[10] The courts adopting the second approach base their conclusion on an interpretation of § 363 and § 506(c), positing that where a secured creditor is undersecured and the debtor cannot otherwise provide the adequate protection required under § 363, the cash collateral can be used pursuant to § 506(c).[11] This approach has been interpreted as an "exception" to the adequate protection requirement of § 323. *KNM*, 126 B.R. at 557. This Court believes that the latter approach is the more reasonable way to analyze this problem, because if the secured party is deemed "adequately protected" simply because the building is properly maintained, the secured creditor would have no right to object to the use of the cash collateral for expenses not related to the maintenance of the rental project, *e.g.* normal estate administration expenses. In this Court's opinion, the secured party's interests should not be so adversely affected.

The determination as to whether a creditor is adequately protected pursuant to § 363 should be determined based on factors such as whether the value of the security exceeds the debt; or whether there is a reorganization plan that provides for "full payment" to the creditor. *See Coventry Commons II* at

---

8. The parties agree with this principle; they disagree as to what constitutes adequate protection.

9. *See Warren St.*, 142 B.R. at 56; *In re Forest Ridge, II, Ltd.*, 116 B.R. 937 (Bankr.W.D.N.C. 1990); *In re Marion St.*, 108 B.R. 218 (Bankr. D.Minn.1989); *In re Triton/Richmond Assoc. Ltd.*, 103 B.R. 764, 767 (Bankr.E.D.Va.1989).

10. *See e.g., In re Forest Ridge, II, Ltd.*, 116 B.R. at 948.

11. *See In re KNM Roswell Ltd.*, 126 B.R. 548, 557 (Bankr.N.D.Ill., 1991).

7–11.[12] The Court does not believe the mere fact that the rental income is used to pay the necessary expenses of operating and maintaining the property or that the property is adequately maintained and not depreciating, in and of itself, provides the adequate protection required under § 363 for the security interest covered by the assignment of rents.

The Court's conclusion is supported by Michigan law[13] which provides that a creditor may take an assignment of rents as security "in addition to the property described in such mortgage." M.C.L.A. § 554.-231. Therefore, the security interest in the mortgaged property is separate and distinct from the security interest in the assignment of rents, and *both* security interests must be adequately protected. Contrary to the position articulated by the debtor, and apparently the bankruptcy court, this Court does not believe that the regeneration of rents and maintenance of the building provides adequate protection for both security interests. If there is no separate assignment of rents, the debtor would still have the obligation to properly operate and maintain the property in order to satisfy § 363. Where, however, there is a specific assignment of rents given as security, a diversion of any portion of the rents to a party other than the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security. Debtor contends that the regeneration of the rents provides adequate security. The secured party has a security interest in the full amount of the future rents. Therefore, this Court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party. Since there is no evidence to support a conclusion that there is any adequate protection for the secured party, other than the regeneration of the rents and their use for the operating and maintaining of the building, this Court concludes that the debtor has not met its burden of establishing the adequate protection requirement of § 363.

In *In re Willowood East Apartments of Indianapolis,* 114 B.R. 138 (Bankr.S.D.Ohio, 1990), the court considered whether any portion of the rents secured by an assignment of rents could be used for any purpose other than the operation and maintenance of the apartment project. The court stated "the issue remaining, therefore, is the relative rights of [the secured party] and the Debtor in the Rents which remain after the operating expenses have been paid." *Id.* at 145. The court explained that:

> The Debtor's use of [the] cash collateral is governed by the provisions of 11 U.S.C. § 363 and § 361. Where a lender is undersecured ... the Debtor's usage of the net Rents will cause a decrease in the value of [the secured party's] interest in property in which the estate has an interest. Any such decrease attributable to the Debtor's usage, therefore, must be protected by cash payments from another source, an additional or replacement lien, or other such indubitable equivalent. 11 U.S.C. § 361. Accordingly, unless payment of a retainer to the counsel chosen by the partnership to represent it in Chapter 11 can be considered a reasonable ordinary operating expense of the Property, the Debtor may not use the net Rents for such purpose without providing adequate protection.

*Id.*

Even assuming that case law supports the proposition that as long as the rental income is used to operate and maintain the property the secured party cannot complain of a lack of adequate protection, the case at hand involves a different issue. The issue here is whether rental income in which the creditor has a security interest can be used for "administrative type" expenses, *i.e.* expert witness fees—not directly related to the operation, maintenance or preservation of the apartment project. In this Court's opinion, such expenditures are permitted only if they meet the requirements of § 506(c) or are otherwise allowable as set forth below.

---

**12.** The Court does not mean to suggest that these are necessarily the *only* factors which may be taken into consideration.

**13.** State law determines the existence and extent of a security interest in rents in bankruptcy cases. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Despite this Court's conclusion that the debtor has not met its burden pursuant to § 363, the bankruptcy court may authorize the use of cash collateral for the "reasonable, and necessary costs, and expenses for preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). The parties in this case, apparently recognizing the authority to use cash collateral as provided by § 506(c), specifically consented to an order entered by the bankruptcy court on April 8, 1993, which provided that:

> A. The Debtor is hereby authorized to use all Rents, subject to the terms and conditions contained in this Order, for the payment of ordinary or necessary costs and expenses of operating and maintaining the Apartment Project.

(Order at 3).[14]

Case law holds that "secured cash collateral" may be used for expenses if (1) the secured party consents to the expenses, (2) the expenses are reasonable and necessary to preserving or disposing of such property and are incurred primarily for the benefit of the secured creditor, or (3) the secured party "caused" the expenditure of such funds. *See In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); (court noted that although emphasis in statute is on benefit to secured creditor, consideration of "consent and causation" are still relevant); *Willowood*, 114 B.R. at 145 (Creditor that initiates frivolous or ill-founded legal actions will force debtor to defend); *In re Staunton Indus., Inc.*, 75 B.R. 699, 702 (Bankr.E.D.Mich.1987).

In this case, the secured party has not consented to the use of cash collateral for the payment of expert witness fees that debtor requests, and debtor's proposed use of the collateral for payment of expert witness fees does not constitute the use of such funds necessary to "preserving ... such property

to the extent of any benefit to the holder of such claim." *See* 11 U.S.C. § 506(c).[15]

Therefore, in order for these expenditures to be allowed, Travelers must have "caused" ROLP to make such expenditures. The bankruptcy court, recognizing that cash collateral can be used based on "implied consent by the secured creditor, apparently irrespective of any direct benefit, or when the expense involved is 'caused' by this secured party," stated:

> Travelers and Debtor have been fighting tooth and nail since the date this case was filed. It could be difficult in that context to find overt or any consent on Travelers['] part, to many of the efforts of the debtor to resist Travelers' efforts, whatever they might be, or to separate out in respect to each motion or issue what is offense and what is defense, or what is cause and what is effect. For example, if Travelers wants a third party manager because of Debtor's alleged incompetence, it is not unreasonable for Debtor to resist that action by the creditor by obtaining evidence as to competence. Viewed, in a broad sense, Travelers' "caused" the latter by alleging the former.

(May 18 Opinion at 6).

The Court also recognizes that debtor has argued that the necessity for these expenditures was "caused" by Travelers (ROLP Br. at 24–28). This Court, however, is not satisfied from the record presented that the expenses allowed by the bankruptcy court were caused by Travelers. Therefore, this Court shall remand this matter to the bankruptcy court for a specific determination as to whether Travelers caused Debtor to incur the expenses, which the bankruptcy court approved in its June 18, 1993 Order. The bankruptcy court should set forth the facts on which it bases such conclusion. This Court will then be in a better position to

---

14. The Order provides that the authority to use the rents as described expires on July 1, 1993 "unless the date is extended in writing Debtor and Travelers." (Order at ¶ 8). The Court has no information as to whether this Order was extended. However, even if such order was not extended, § 506(c) would apply.

15. The bankruptcy court's June 18, 1993 Order, does not expressly state that the expenditures approved by the Court were necessary for the preservation of the property; nor, if that was the bankruptcy court's intent, does the order set forth any basis for concluding that these expenditures were necessary for the preservation of the property to the extent the they would benefit Travelers.

review the decision of the bankruptcy court, applying the appropriate standard of review for an appeal of a bankruptcy court's decision.

An Order consistent with this Opinion shall issue forthwith.