**In re GUARDIAN REALTY GROUP, L.L.C., Debtor.**

**Bankruptcy No. 96–00314.**

United States Bankruptcy Court,
District of Columbia.

Feb. 6, 1997.

John K. Shunk, Messner Pavek & Reeves, L.L.C., Denver, CO, for Beal Bank.

Edward M. Kimmel, Hambright & Kimmel, Washington, DC, for debtor.

### DECISION ON BEAL BANK'S MOTION FOR TURNOVER OF RENTS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration is a Motion for Turnover of Rents by creditor Beal Bank, SSB ("Beal"). The debtor, Guardian Realty Group, LLC ("Guardian" or "the debtor"), opposes the motion. The court concludes that the rents are the debtor's but are cash collateral. Accordingly, Beal's motion will be granted to the extent it seeks a sequestration and accounting of rents and will be denied to the extent it seeks a turnover of rents.

## I

### FACTS[1]

The debtor owns property located at 122 Market Street, Lewes, Delaware. The property is subject to a recorded mortgage securing the payment to Beal of a promissory note ("Note") in the amount of $1,400,000.00.[2]

The mortgage provides that payment is secured, *inter alia*, by "all right, title and

---

1. The facts are largely drawn from Beal's motion and reply, but the debtor has implicitly admitted Beal's factual assertions.

2. The property consists of a nineteen-room bed-and-breakfast as well as a commercial condominium unit. A second commercial condominium unit at the same address is not encumbered by the mortgage, and rents from that second condominium are not addressed by the motion.

interest of Borrower" in the rents from the property. Mortgage, at 2–3 (para. (d)). It further provides that "these presents and the estate hereby granted shall cease, determine and be void" upon the borrower's repayment of the loan in accordance with the terms of the Note and the mortgage. Mortgage, at 3.

Between 1987 and 1991, the debtor's predecessor-in-interest ("the partnership"), defaulted on the payments due under the Note, and in May 1991 the original lender commenced a foreclosure action. In June 1991 the partnership and the original lender entered into a settlement agreement which established a payment schedule in lieu of the lender executing upon the judgment in that action.

Through a series of assignments, Beal acquired the Note and the mortgage. On January 3, 1995, Beal sent a demand letter to the partnership stating that the partnership had failed to make the payments required by the settlement agreement and was in default. The partnership neither responded nor cured the default. On March 29, 1995, Beal sent a second demand letter to no avail. Accordingly, on July 3, 1995, Beal re-initiated foreclosure proceedings.

In November 1995, Guardian acquired the property from the partnership.[3] Guardian then filed its Chapter 11 petition to prevent Beal from concluding its foreclosure on the property.

## II

### ANALYSIS

A. *Beal had a Perfected its Security Interest in the Rents Under Delaware Law at the Time Guardian Filed its Bankruptcy Petition.*

■ Del.Code Ann. tit. 25, § 2121 (1996) (emphasis added) states:

---

3. Beal contends that the assignment of the property to Guardian without Beal's knowledge or approval directly violated the mortgage. In any event, section 5.04 of the mortgage provides that Guardian is bound by the provisions of the mortgage as a successor of the borrower.

Instruments transferring, pledging, or assigning lessors' interest in leases or rents arising from real property as security.

(a) Upon recording, in the office of the Recorder of Deeds in and for the county where the real property lies, of any instrument transferring, pledging or assigning the lessor's interest in leases (whether in existence or thereafter existing) of or rents (including security deposits) arising from real property as conditional or unconditional security for a debt or duty, the interest of the transferee, pledgee or assignee shall be fully perfected as to the transferor, pledgor or assignor of any lessee, of obtaining the possession of the real property, of impounding the rents or security deposits, of filing a financing statement under the Delaware Uniform Commercial Code, of securing the appointment of a receiver, or of taking any other affirmative action, and such interest shall have priority according to the time of recording the instrument in the proper office, without respect to the time of its being signed and delivered.

. . . . . .

(d) *Any recorded instrument transferring, pledging, or assigning an interest in leases of or rents arising from real property shall be duly perfected as herein provided,* except that nothing herein shall alter, change or modify any perfected order of priority of interests in such leases or rents which exists on the date that this legislation is enacted.

Although this statute only became effective on July 19, 1995, paragraph (d) clearly indicates that the legislature intended it to be retroactive. Thus, Beal has had a perfected security interest in the rents since July 1, 1987, when the mortgage and security agreement were recorded. Accordingly, any identifiable rents that have accrued to the property since July 1, 1987, constitute Beal's cash collateral. 11 U.S.C. § 552(b).

■ The debtor is not entitled to use, sell, or lease cash collateral unless Beal consents or the court authorizes such activities after notice and a hearing. 11 U.S.C. § 363(c)(2). Hence, the court will issue an order requiring the debtor to segregate the rents into a separate account. The court will further require the debtor to submit to Beal an accounting of all rents collected since July 1, 1987, and to continue to prepare and submit to Beal accountings of all rents.

**B. *Title did not Pass to Beal on the Date of the Partnership's Earliest Default.***

Beal argues that it obtained title to the rents immediately upon Guardian's default, and thus, the rents are not part of Guardian's estate. The court rejects this argument.

The properties are located in Delaware and the court is required to recognize any property rights which may have been created by the mortgage under Delaware law. *In re Prichard Plaza,* 84 B.R. 289, 293–94 (Bankr. D.Mass.1988), *citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ Here, Delaware law states that "Upon recording … any instrument *transferring, pledging or assigning* the lessor's interest in leases (whether in existence or thereafter existing) of or rents (including security deposits) arising from real property as *conditional or unconditional security* for a debt or duty, the interest of the transferee, pledgee or assignee *shall be fully perfected....*" Del.Code Ann. tit. 25, § 2121 (1996) (emphasis added). By speaking to "perfection," it is clear that the statute treats any assignment of rent for security, conditional or unconditional, as a security interest and not as a transfer of absolute title.

■ Moreover, the court's research of Delaware law supports the proposition that there has long been a presumption that a mortgage creates a lien, and not title, in favor of a mortgagee. *Equitable Trust Company v. O'Neill,* 420 A.2d 1196, 1201 (Del. Sup.Ct.1980).[4]

Beal cites *Jason Realty, L.P. v. First Fidelity Bank, N.A.,* 59 F.3d 423 (3rd Cir.1995),

---

4. The court could find no Delaware statutory provisions or case law specifically pertaining to the issue of whether Delaware accords a rent assignment to a mortgagee the status of an absolute conveyance of title.

**4**

for the proposition that the mortgage's conveyance of all "right, title and interest" in the rents to the lender created an absolute assignment of the rents to Beal, such that the rents are no longer property of the estate under 11 U.S.C. § 541. *Jason Realty* is one in a line of Third Circuit decisions to favor absolute assignments, the landmark case being *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3rd Cir.1993). Even if the court agreed with the reasoning of the Third Circuit, Beal's argument would likely fail in that both *Jason Realty* and *Commerce Bank* involved states whose property law is grounded in "title theory" rather than "lien theory."

But more fundamentally, the court disagrees with this line of cases, all of which fail to address the Supreme Court's decision in *United States v. National Bank of Commerce*, 472 U.S. 713, 727, 105 S.Ct. 2919, 2927–28, 86 L.Ed.2d 565 (1985).

Although *National Bank* dealt with the question of what is "property" of the taxpayer under the federal tax lien statute, 26 U.S.C. § 6321, its reasoning applies equally to the question of what is "property" of the estate under 11 U.S.C. § 541. The classification question is a matter of federal law applied to rights created by state law.

 Under *National Bank*, the court must look to the substance of state law rights, not merely the label that state law places on them. *See also In re King*, 961 F.2d 1423, 1426 (9th Cir.1992); *In re Garfinckels, Inc.*, 203 B.R. 814 (Bankr.D.D.C. 1996) (for a recent discussion of *National Bank* by this court). That the mortgage purports to give the lender absolute title to the rents or that state law may *label* the assignment as giving the mortgagee title (as is often the case in states following the "title theory" of mortgages) does not control the court's decision. Federal law will determine the substance of Beal's state law rights at issue here, *i.e.*, whether they constitute a mere security interest, or instead, ownership depriving the estate of any interest in the rents such that the rents are not "property" of the estate for purposes of 11 U.S.C. § 541.

*Jason Realty*, 59 F.3d at 427, and *Commerce Bank*, 5 F.3d at 37, rely on *Butner*,

440 U.S. at 55, 99 S.Ct. at 918, in holding that assignments of rents divests the debtor of ownership of the rents. But the Court's decision in *National Bank* is not at odds with *Butner*, which only held that bankruptcy courts may not create a security interest through equitable powers where none exists under state law. *Commerce Bank* and *Jason Realty* simply read *Butner* too broadly and pay no heed to the rule under *National Bank* that federal law looks at the substance of the parties' interests, not the "title" label state law may affix in determining what constitutes "property" of a debtor under a federal statute.

The majority of cases to consider language in a security agreement granting a mortgagee an alleged absolute assignment of rents have found the true nature of the mortgagee's interest to be no more than security even in those states following the "title theory" of mortgages. *See e.g., In re McCann*, 140 B.R. 926, 927 (Bankr.D.Mass.1992); *In re Bethesda Air Rights Limited Partnership*, 117 B.R. 202, 206 (Bankr.D.Md.1990) ("title theory" state); *In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 141 (Bankr.S.D.Ohio 1990). The same is true in this instance.

 Isolated portions of the mortgage language appear absolute, but read in the context of the entire document, it is obvious that the language was intended for security purposes only. For example, the borrower assigns to the lender "all right, title and interest" to the rents. Mortgage, at 2–3. But the paragraph containing that assignment begins by stating that its purpose is "to secure the payment of the Indebtedness...." Even paragraph (d) on page 3, which expressly enumerates the leases and rents as one of the types of properties assigned does so by saying that what is being assigned is "the right to receive and apply the Rents, issues and profits of the Property *to the payment of the Indebtedness.*" (Emphasis added.)

The language of absolute assignment is contradicted by several other mortgage provisions. First, Section 2.16(b) states that "the Borrower hereby grants ... to the Lender a *security interest* in, all right, title,

and interest ... in and to any leases of the Property...." (Emphasis added.)

Second, the lender's contractual right to collect rents is conditional. The mortgage provides that the lender only has the right to collect the rents "upon the occurrence of an event of default hereunder." *Id.* In fact, default alone is insufficient to permit the lender to collect rents. The right to receive rents arises only after the lender has given notice of default, the borrower has failed to cure within thirty days, and the lender has entered upon the property. Mortgage, Sections 2.21, 4.04, at pages 14 and 18, respectively. Indeed, Section 4.04 in authorizing receipt of rents on default refers to the rents as "being hereby assigned to the Lender as additional security for the repayment of the Indebtedness."

Finally, the lender's right to receive rents completely terminates upon payment of the loan in full by the borrower. Mortgage, at 3.

While the mortgage purports in one place to give the lender title to the rents, the above-discussed terms are the classic signs of a security interest and the intended substance of this was only that of a security interest.

It is unlikely that Beal could prove it had title to the rents even under *Jason Realty,* wherein the court points out the importance of a lender taking active steps pre-petition to "implement" an assignment clause, *e.g.,* taking possession of the property or seeking the appointment of a receiver prior to the debtor's filing. *Jason Realty,* 59 F.3d at 430 (citation omitted).[5] In this case, Beal never took such steps, as the mortgage required, to enforce its assignment clause.

Even if Beal had taken such steps, and Delaware were a state that followed the title theory of mortgages, the court would decline to follow *Jason Realty* and *Commerce Bank* and would rule that only those rents actually already collected by Beal are its property. Rents not collected by Beal would remain the estate's property for purposes of 11 U.S.C. § 541 because the assignment in substance serves a security interest purpose and thus as a matter of *federal* law the mortgagee's interest is that of a secured creditor, not an owner.

■ Whether in a "title state" or a "lien state," a mortgagee's interest in rents to secure its claim is that of a lienor against, not an owner of, the rents. For purposes of determining ownership under *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205–06, 209, 211, 103 S.Ct. 2309, 2313–14, 2315, 2316, 76 L.Ed.2d 515 (1983) as discussed in *Bethesda Air Rights,* 117 B.R. at 210, a mortgagee's rights rise no higher than any other lien or execution on unpaid rents—a secured claim, but not an ownership right, until the rents are actually paid to it. *See In re Challenge Air Int'l., Inc.,* 952 F.2d 384, 387 (11th Cir. 1992); *In re Wolensky's Ltd. Partnership,* 163 B.R. 629, 635–36 (Bankr.D.D.C.1994).

■ There is nothing to preclude a debtor from making what is in both form *and* substance an absolute assignment of rents. For example, if the mortgagor and mortgagee agreed that certain tenants' unpaid rents are assigned to the mortgagee with a credit of $10,000 to flow to the mortgagor, the mortgagor has clearly parted with ownership. The mortgagee bears all risks if the rents go uncollected. If the rents actually collected exceed $10,000, the mortgagor has no right to the excess even after paying the mortgage debt in full. But where (as here or as in *Jason Realty* and *Commerce Bank*) no provision is made for the debtor to get any credit for the rents until the mortgagee collects them, the "assignment" of rents is in substance for security, not a passing of actual ownership. The fundamental fallacy of *Jason Realty* and *Commerce Bank* is that they disregard the conditional right of the mortgagee in the rents. As long as the mortgagor is entitled to the rents upon paying the mortgage debt, a security interest has been given, not a transfer of ownership. *See Bethesda Air Rights,* 117 B.R. at 207.

---

5. *Commerce Bank* turned on similar circumstances. In that case, the both lenders had, pre-petition, taken such steps as notifying the tenants of their interests, obtaining judgments in mortgage foreclosure, collecting the rents, and occupying the premises to the exclusion of the debtor. *Commerce Bank,* 5 F.3d at 36. Again, with the exception of the earlier obtained judgment of foreclosure, none of these circumstances are present here.

The court cannot conclude that the actual intent of the parties here was to create anything but a security interest in favor of Beal Bank. Accordingly, Beal is not entitled to turnover.