ELECTRONIC CITATION:  2010 FED App. 0010P (6th Cir.)
File Name:  10b0010p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**


In re:                                              )
       BUTTERMILK TOWNE CENTER, LLC,   )
                                      )   Nos. 10-8036, 10-8046, 10-8062
           Debtor.                          )
_____   )


Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Covington
No. 10-21162

Argued:  November 10, 2010

Decided and Filed:  December 23, 2010

Before:  BOSWELL, HARRIS, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

ARGUED:  Timothy P. Palmer, BUCHANAN INGERSOLL & ROONEY PC, Pittsburgh, Pennsylvania, for Appellant. Beth A. Silvers, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellee. ON BRIEF: Timothy P. Palmer, BUCHANAN INGERSOLL & ROONEY PC, Pittsburgh, Pennsylvania, for Appellant.  Timothy J. Hurley, Paige Leigh Ellerman, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellee.

_____

**OPINION**
_____

     STEVEN W. RHODES, Bankruptcy Appellate Panel Judge.  The dispositive issue in this appeal is whether a debtor in a "single asset real estate" case can provide adequate protection to a creditor for the use of rents as cash collateral without an equity cushion in the property.  The Panel finds that *Stearns Bldg. v. WHBCF Real Estate* (*In re Stearns Bldg.*), 165 F.3d 28, 1998 WL 661071

(6th Cir. Sept. 3, 1998) (unpublished table decision) is controlling. Accordingly, the Panel must reverse the bankruptcy court's determination that the debtor has provided adequate protection for the use of cash collateral.

## I.    ISSUES ON APPEAL

1. Did the bankruptcy court err in holding that post-petition rents, revenues and/or profits derived from the operation of the Appellee's leased real property constitute property of the estate under 11 U.S.C. § 541 and cash collateral under 11 U.S.C. § 363?

2. Did the bankruptcy court err in holding that cash collateral in the form of post-petition rents may be utilized by the Appellee to fund ordinary administrative expenses of the estate, including professional fees?

## II.    JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Conclusions of law are reviewed *de novo*. *Mitan v. Duval* ( *In re Mitan*), 573 F.3d 237 (6th Cir. 2009); *Elm Rd. Dev. Co. v. Buckeye Ret. Co., LLC, Ltd.* (*In re Hake*), 419 B.R. 328 (B.A.P. 6th Cir. 2009). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Palmer v. Washington Mutual Bank* (*In re Ritchie*), 416 B.R. 638, 641 (B.A.P. 6th Cir. 2009) (emphasis in original) (citing *General Elec.*

*Credit Equities, Inc. v. Brice Rd. Devs., LLC* (*In re Brice Rd. Devs., LLC*), 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008)).

Factual findings underlying the bankruptcy court's ruling are reviewed for clear error. *In re Mitan*, 573 F.3d at 241. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

## III. FACTS

Debtor, Buttermilk Towne Center is the owner and operator of a commercial real estate development. On or about August 1, 2004, Buttermilk Towne Center entered into a Construction Financing Agreement, ("Financing Agreement"), with LaSalle Bank, now known as Bank of America. The loan proceeds were used to fund the purchase of approximately $34,000,000 of Taxable Industrial Build Revenue Bonds. Bank of America is the 100% owner of the bonds. To maintain the tax-exempt status of the bonds used to finance the project, the fee interest in the real estate for the project was conveyed to the City of Crescent Springs, ("City"), which in turn leased the property back to Buttermilk Towne Center pursuant to a ground lease.

The bonds are to be repaid through lease payments to be made by Buttermilk Towne Center to the City under the ground lease. Buttermilk Towne Center's obligations under the Financing Agreement are secured by an Open-End Mortgage Security Agreement dated August 1, 2004, ("Mortgage"). Pursuant to the Mortgage, Bank of America holds a mortgage lien in both the fee interest in the underlying property and Buttermilk Towne Center's interest in the ground lease.

3

As lessee under a ground lease, Buttermilk Towne Center subleases space in the development to tenants who pay rent to Buttermilk Towne Center. The rents generated from these subleases constitute the entirety of the Buttermilk Towne Center's revenues.

Contemporaneously with the Mortgage, Buttermilk Towne Center executed an Assignment of Rents and Subleases in favor of Bank of America, ("Assignment"). Under the Assignment, Buttermilk Towne Center assigned and transferred all rents and profits derived from the project to Bank of America subject to a license back to Buttermilk Towne Center to collect and use such rents, provided that Buttermilk Towne Center was not in default of its obligations. Buttermilk Towne Center's limited revocable license to collect and use the rents was to terminate automatically and without notice upon the occurrence of an Event of Default. Bank of America recorded the Mortgage and Assignment in the real property records in Kenton County, Kentucky.

Buttermilk Towne Center's obligations under the Financing Agreement matured on December 31, 2009. Buttermilk Towne Center's failure to repurchase the bonds from Bank of America on or by December 31, 2009, is an Event of Default under the Financing Agreement.

Buttermilk Towne Center filed a chapter 11 Bankruptcy Petition on April 28, 2010. Contemporaneously with the petition, Buttermilk Towne Center filed an Expedited Motion for Interim Use of Cash Collateral seeking to place $260,000 in escrow for payment of professional fees. Bank of America filed an objection to use of the rents as cash collateral, arguing that the rents are not property of the estate due to the Assignment.

The bankruptcy court held that the rents are property of the bankruptcy estate and constitute cash collateral and scheduled a final hearing date for a determination regarding adequate protection. ("Rent Order" May 18, 2010 Memorandum Opinion and Order, Case No. 10-21162, Dkt # 66). Bank of America filed a timely appeal of the May 18, 2010 rent order.

On May 17, 2010, Bank of America filed a second objection to the use of cash collateral arguing that it is not adequately protected because there is no equity cushion in the property and it already has a lien in the rents.

The bankruptcy court conducted an evidentiary hearing on May 25, 2010, regarding the issue of adequate protection. Donald Feathers, an independent contractor for a property management company which manages the Debtor's operations, testified that future rents will exceed the amount needed to pay the Bank's debt in full. The bankruptcy court ruled that Bank of America is adequately protected and approved the cash collateral order. (June 29, 2010 Order)[1]

Bank of America has appealed the June 29, 2010, order. Bank of America argues that Sixth Circuit case law requires an equity cushion in single asset real estate cases to support a finding of

_____

[1] On June 1, 2010, the bankruptcy court entered an order related to cash collateral. (Final Order on Use of Cash Collateral, case no. 10-21162, Dkt. # 94) The order permitted the use of cash collateral from the petition date through August 20, 2010. The Order permitted Buttermilk Towne Center to use cash collateral to pay items designated in an attached budget. However, it did not allow Buttermilk Towne Center to use cash collateral to pay professional fees without further order of the court. Debtor's attorney was allowed to place $260,000 into its attorney's client trust fund account. Paragraph 7 of the order held "[a]s adequate protection for any diminution in the value of the Lender's interest in the Cash Collateral, pursuant to Code §§ 361 and 363, the Lender is granted liens (the "Replacement Lien") upon all property of the Debtor of the same type and description as the pre-petition collateral to the extent the Lender held a valid, properly perfected lien on such collateral as of the Petition Date." Bank of America did not file a notice of appeal from this order.

The Panel issued an order directing the parties to address whether the finding in Paragraph 7 that a replacement lien adequately protects Bank of America for the use of its cash collateral is binding on Bank of America and prevents Bank of America from raising the issue in the current appeal.

The Parties filed a Joint Statement in response to the Panel's order. The parties agree that Paragraph 7 is not binding and does not prevent Bank of America from raising the issue in the current appeal. Moreover, the bankruptcy court's June 29, 2010 Memorandum Opinion and Order states that "[t]he Court took under submission the sole issue of whether Buttermilk Towne Center ("Debtor") has provided adequate protection to the Bank for its proposed use of cash collateral to pay professional fees." Accordingly, the Panel holds that the June 1, 2010 order, although entitled "Final Order", was not intended by the bankruptcy court or the Parties to be a final order on the issue of whether a replacement lien adequately protects the Bank. Therefore, the Panel will address the issue in the current appeal.

adequate protection. Bank of America asserts that since there is no equity cushion, the order finding that Bank of America is adequately protected should be reversed.

On July 30, 2010, Buttermilk Towne Center filed its second motion for use of cash collateral seeking permission to continue to use cash collateral to pay expenses, including professional fees. Bank of America objected to the second cash collateral motion for the same reasons stated in its two previous objections.

On August 10, 2010, the bankruptcy court entered the second cash collateral order overruling Bank of America's objections for the reason stated in the May 18, 2010 Memorandum Opinion and Order and the June 29, 2010 Memorandum Opinion and Order. Bank of America filed a timely appeal of the August 10, 2010 order.

## IV. DISCUSSION

### A.

The first issue arises from the May 18, 2010 Memorandum Opinion and Order (Dkt. # 66). In its initial objection to the use of cash collateral, Bank of America asserted that the rents were not property of the estate due to an "absolute assignment." The bankruptcy court overruled Bank of America's objection, finding that the rents were property of the estate. What constitutes property of the estate is determined by state law. *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 915 (1979).

Bank of America argues that due to the Assignment of Rents from Buttermilk Towne Center, Bank of America owns the rent proceeds and they are not property of the estate. Bank of America concedes that there is no Kentucky law directly on point, but asserts that under Kentucky law contracts must be enforced to effectuate the intent of the parties and that it was the parties' intent that

6

Bank of America have an absolute assignment of the rents. Bank of America relies on *Jason Realty, L.P. v. First Fidelity Bank, N.A.* (*In re Jason Realty, L.P.*), 59 F.3d 423 (3rd Cir. 1995).

Buttermilk Towne Center asserts that the Assignment of Rents was for security purposes and that the rents are property of the bankruptcy estate pursuant to both state and federal law. Buttermilk Towne Center argues that none of the case law cited by Bank of America is directly on point or applies Kentucky law. Additionally, Buttermilk Towne Center asserts that the rents are property of the estate pursuant to § 541(a)(6).[2]

The bankruptcy court agreed with Buttermilk Towne Center. Applying Kentucky law, the bankruptcy court found that the Assignment of Rents was for security purposes, thus the rents are property of the bankruptcy estate. The Panel affirms the ruling of the bankruptcy court. Neither the Assignment of Rents nor Bank of America's pre-petition conduct alters the fact that the rents are property of the bankruptcy estate.

## 1. Assignment of Rents

The parties agree that under Kentucky law the courts must interpret the Assignment of Rents as a contract and give effect to the parties' intent. However, the parties do not agree as to what that intent entailed.

Bank of America asserts that the Assignment of Rents was intended to give ownership of the rents to Bank of America and only give Buttermilk Towne Center a license to collect the rents. Bank of America notes that the Assignment provides: "Assignor hereby grants, transfers, sets over and

---

[2]  11 U.S.C. § 541(a)(6) states that the bankruptcy estate is comprised of "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." Recent cases have suggested that the question of whether rent proceeds are estate property is not a question of state law, but rather federal law. The Panel does not reach this issue. *See In re Bryant Manor, LLC*, 422 B.R. 278, 288 (Bankr. D. Kan. 2010); *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009); *In re Las Torres Dev. LLC*, 408 B.R. 876 (Bankr. S.D. Tex. 2009).

assigns to Assignee, all of the right, title and interest of Assignor in and to: (a) all of the rents, revenues, issues, profits . . . arising from the [project]." Assignment of Rents, ¶ 2(a).

Buttermilk Towne Center asserts that the Assignment of Rents was to give Bank of America a security interest in the rents. Buttermilk Towne Center points to paragraph C in the Assignment which states that the Assignment is a "Grant of Security Interest" "given to secure" payment to Bank of America.

The Panel holds that Buttermilk Towne Center's interpretation of the nature of the Assignment of Rents better reflects the parties' intent. There are three characteristics of the assignment that show it was intended to be a security interest. First, the debtor retained the right to collect the rents so long as it was not in default of the mortgage. Second, even if a default occurred, giving Bank of America the right to collect the rents, the rents could only be used to reduce Buttermilk Towne Center's debt to Bank of America. Third, the Assignment of Rents automatically terminated when Buttermilk Towne Center's debt to Bank of America was satisfied. These key provisions of the contract do not support an interpretation that Bank of America became an absolute owner of the rents. Rather, they show that the parties intended the assignment to serve as additional security for the debt.

Although the facts in *Jason Realty* are similar to the present case, the Panel is not persuaded by the holding. In *Jason Realty*, the Third Circuit, interpreting New Jersey law, held that an Assignment of Rents conveyed absolute ownership of the rents to the secured lender, thus the rents were not property of the estate. The present case is not governed by New Jersey law. Moreover, the Panel does not find that Kentucky law would require the same holding. Additionally, as observed in *In re Guardian Realty Group*, *LLC*, 205 B.R. 1 (Bankr. D. D.C. 1997):

> The majority of cases to consider language in a security agreement granting a mortgagee an alleged absolute assignment of rents have found the true nature of the mortgagee's interest to be no more than security even in those states following the "title theory" of mortgages. *See e.g., In re McCann*, 140 B.R. 926, 927 (Bankr. D. Mass. 1992); *In re Bethesda Air Rights Limited Partnership*, 117 B.R. 202, 206

8

(Bankr. D. Md.1990) ("title theory" state); *In re Willowood East Apartments of Indianapolis II, Ltd.,* 114 B.R. 138, 141 (Bankr. S.D. Ohio 1990).

Bank of America also relies on *In re Kingsport Ventures*, *L.P.*, 251 B.R. 841 (Bankr. E.D. Tenn. 2000). In *Kingsport Ventures*, the court found an absolute assignment of rents divested the debtor of a property interest under Tennessee law. *Id.* at 848. A subsequent Tennessee case discussed and distinguished *Kingsport Ventures*:

> Moreover, the language in the assignment document in *Kingsport Ventures, L.P.*, eliminated any doubt possibly inferred by the parties by clarifying that the assignment is "not an assignment for additional security only." *Kingsport Ventures, L.P.*, 251 B.R. at 848. Here, no such clarification exists in the documents. The provisions addressing the license to collect rents and the termination of the license also differ.

*In re 5877 Poplar*, *L.P.*, 268 B.R. 140, 147 (Bankr. W.D. Tenn. 2001). The present case is more like *5877 Poplar*. While isolated portions of the assignment may appear absolute, when read in the context of the entire document, it is clear that the assignment was intended to serve as additional security only.

The Sixth Circuit has held:

> In Kentucky, it has been declared that the entire tenor and affect of an instrument pledging rents, issues and profits in addition to the real estate mortgaged is that such a pledge is deemed secondary security, with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action looking toward possession and subjection.

*Green v. Vanston Bondholders Protective Comm. (In re American Fuel & Power Co.)*, 151 F.2d 470, 481 (6th Cir. 1945) (internal quotation marks and citations omitted). Bank of America has not presented any Kentucky case law that contradicts the Sixth Circuit's statement of law on this issue.

## 2. Pre-petition Possession of the Rents

Bank of America's second argument that the rents are not property of the estate is based on its assertion that it took pre-petition possession of the rents. Bank of America asserts that it took possession of the rents by sending notice to the tenants that they were to remit rents to Bank of America rather than Buttermilk Towne Center.[3] The bankruptcy court held that even if Bank of America took pre-petition possession of the rents this action did not change the ownership of the rents. Thus, the rents remained property of the bankruptcy estate and were cash collateral.

The Panel affirms the bankruptcy court's conclusion in this regard. The case law cited by Bank of America only addresses perfection of a lien and priority of repayment under the Bankruptcy Code. Even if the assignment gave Bank of America a right to possess the rents pre-petition, the assignment, as explained above, did not give Bank of America an absolute ownership of the rents. Without an absolute right of ownership, mere possession cannot divest the debtor of its ownership interest, therefore the rents are property of the estate. *See In re Willows of Coventry, Ltd.*, 154 B.R. 959, 965 (Bankr. N.D. Ind. 1993).

The bankruptcy court found that the Assignment in question was not absolute, but rather was only a security assignment. Therefore, Buttermilk Towne Center had a remaining property interest in the rents subject to Bank of America's lien. Accordingly, the bankruptcy court determined that the rents were indeed property of the estate. Additionally, the bankruptcy court held that Bank of America's pre-petition conduct did not divest Buttermilk Towne Center of its property rights in the rents. The Panel affirms the bankruptcy court's May 18, 2010 opinion and order.[4]

---

[3] It is not clear what percentage of tenants actually did remit rents to Bank of America; however, this factual issue does not affect the Panel's legal conclusions.

[4] The Parties agree that if the rents are property of the bankruptcy estate, then they constitute cash collateral.

B.

The second issue on appeal is whether Bank of America is adequately protected by a replacement lien in the rents. The bankruptcy court held that giving Bank of America a replacement lien in the rents, adequately protected Bank of America for the use of the rents as cash collateral. Therefore, the bankruptcy court allowed Buttermilk Towne Center to use the rents to pay certain expenses, including attorney fees. Bank of America argues that the bankruptcy court erred, asserting that *Stearns Bldg. v. WHBCF Real Estate* (*In re Stearns Bldg.*), 165 F.3d 28, 1998 WL 661071 (6th Cir. Sept. 3, 1998) (unpublished table decision) is directly on point and should be followed.

The facts of *Stearns Building* are very similar to the present case. The debtor owned an apartment complex and its income was derived from the rents paid by the tenants. Its indebtedness to its lender was secured by liens, mortgages, security interests, and an assignment of rents.

Pursuant to a cash collateral motion, the debtor requested authority to use cash collateral, including the rents, to pay for administrative expenses unrelated to the maintenance and operation of the complex, including the fees and expenses of its lawyers and consultants involved in the bankruptcy. As adequate protection for the use of the rents, debtor proposed to grant the lender "a replacement lien in all types and descriptions of collateral which may have been secured[.]" *In re Stearns Bldg.*, 1998 WL 661071, at *2.

The bankruptcy court denied the motion for cash collateral holding that the debtor could not use cash collateral to pay its professional fees or any other expenses unrelated to the maintenance and operation of the complex. The bankruptcy court also ordered debtor's attorney to disgorge the retainer previously paid from cash collateral. The debtor sought a stay pending appeal which was denied by both the bankruptcy court and the district court.

The procedural posture of *Stearns Building* is different from that of the case presently before the Panel, since *Stearns Building* was an appeal from an order denying a motion for stay pending

appeal.  However, in deciding the appeal, the Sixth Circuit had to determine the likelihood of success

on the merits and, in doing so, addressed the exact issue currently before the Panel:  whether a lender

is adequately protected by a replacement lien on rents in which the lender has an independent

security interest?

In answering that question, the Sixth Circuit explained:

> [The lender] argues that it is clear that Debtor cannot use the net rents unless
> [the lender] is given "adequate protection" for their use, or [the lender] consents to
> such use. [The lender] clearly has not consented to such use, nor, it maintains, does
> Debtor's proposal to grant [the lender] a replacement lien, . . . constitute adequate
> protection for the use of the rents. . . . [W]e hold that Debtor has failed to show a
> likelihood that it will prevail on appeal.  The bankruptcy code and the case law
> confirm as much.
>
> . . .
>
> [The lender] is entitled to receive adequate protection for Debtor's use of the
> net rents generated post-petition if the rents constitute "cash collateral" and there is
> compliance with 11 U.S.C. § 552(b). Both requirements are met here.  11 U.S.C.
> § 363(a) expressly provides that rents are "cash collateral."  In addition, 11 U.S.C.
> § 552(b)(2) generally provides that, if there is a pre-petition security agreement that
> extends to pre-petition property and to amounts paid as rents of such property, then
> that security interest extends to post-petition rents to the extent provided in the
> security agreement.   In the present case, the pre-petition security agreement
> establishes that, upon default, "[Debtor] in such case does hereby bargain, sell, assign
> and set over to [the lender] all the rents, income and profits, which, whether before
> or after foreclosure of this mortgage or during the period of redemption, shall accrue
> and be owing for the use or occupation of [the complex]."
>
> Hence, it is clear that Debtor must provide adequate protection if it is to use
> the net rents.  *However, the record does not indicate that Debtor possesses any
> unencumbered assets with which it can offer [the lender] adequate protection.*  Nor,
> we note, does Debtor seriously contest this point[.]

*Stearns Bldg.*, 1998 WL 661071, at *3-4 (footnotes and internal citations to record omitted)

(emphasis added).

12

The Sixth Circuit also cited with approval *Travelers Ins. Co. v. River Oaks Ltd. P'ship* (*In re River Oaks Ltd. P'ship*), 166 B.R. 94 (E.D. Mich. 1994).

> Regarding the issue of adequate protection, the district court explained that the secured creditor possesses two distinct security interests, i.e., a mortgage on the apartment project and a perfected security interest in rents, and each of these interests must be adequately protected. *Id.* at 97. *Moreover, the court specifically rejected the debtor's argument that newly generated rents each month and the continued maintenance of the property constituted adequate protection for the use of the cash collateral* to pay the expert witness fees. *See id.* at 97-98. The court stated:
>
>> Where ... there is a specific assignment of rents given as security, a diversion of any portion of the rents to a party other [than] the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security.... The secured party has a security interest in the full amount of the future rents. *Therefore, this court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party.*
>
> *Id.* at 99. As the court's reasoning in *River Oaks* makes clear, Debtor's diversion of the net rents from [the lender], if permitted under the present circumstances, clearly would diminish [the lender's] interest in the assignment of rents portion of its perfected security interest.

*Stearns Bldg.*, 1998 WL 661071, at *5 (emphasis added).

The Sixth Circuit concluded:

> In sum, since the retainer constitutes property of the estate and [the lender] has a security interest in pre-and post-petition rents, the retainer-while paid from pre-petition rents-still constitutes part of [the lender's] "cash collateral" and thus cannot be used unless [the lender] is given adequate protection for such use. Debtor, of course, did not provide such protection here. In sum, Debtor has not shown a likelihood that it will prevail on the merits on appeal.

*Stearns Bldg.*, 1998 WL 661071, at *6.

13

Neither the bankruptcy court nor Buttermilk Towne Center adequately addresses the holding in *Stearns Building*. The bankruptcy court's only citation to *Stearns Building* is for the proposition that a debtor cannot use rents if it cannot provide adequate protection for the net rents, which is true but misses the Sixth Circuit's holding that a replacement lien is not adequate protection.

Buttermilk Towne Center argues that *Stearns Building* is expressly and necessarily limited to its facts, and that there were no facts in *Stearns Building* that suggested that the proposed chapter 11 plan would pay creditors in full. Moreover, Buttermilk Towne Center argues that *Stearns Building* is not binding on this panel because it is a 12-year-old unpublished case.

While it is true that an unpublished opinion is not binding, *see Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 201 n. 2 (BAP 6th Cir. 1998), the Panel should not disregard a Sixth Circuit opinion merely because it is unpublished. *Stearns Building* is directly on point. Buttermilk Towne Center has not cited any other Court of Appeals cases directly on point. Moreover, the Panel has not found any other Sixth Circuit case law directly on point. Accordingly, the Panel will follow the holding in *Stearns Building*.

The bankruptcy court erred in holding that Bank of America is adequately protected by a replacement lien. Therefore, the June 29, 2010 and August 10, 2010 Orders are reversed.

## V. CONCLUSION

Accordingly, in appeal number 10-8036, the bankruptcy court's opinion and order is AFFIRMED. In appeal numbers, 10-8046 and 10-8062, the bankruptcy court's opinions and orders are REVERSED.